United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 09, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| PREFERRED READY-MIX LLC, | § § | CASE NO: 21-33369 |
| Debtor. | § § § | CHAPTER 11 |
| PREFERRED READY-MIX LLC, | § § | |
| Plaintiff, | § § | |
| VS. | § § | ADVERSARY NO. 22-3040 |
| ROBERT BERLETH and BERLETH AND ASSOCIATES, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Trial was held on November 8, 2022. For the reasons so stated the Complaint for Turnover and Related Relief is granted in part and denied in part.

### PROCEDURAL BACKGROUND

The debtor, Preferred Ready Mix LLC, the plaintiff herein ("Ready-Mix") brought suit against Robert Berleth, ("Berleth") a State Court receiver in this adversary under four counts, Turnover, Stay Violation, Conversion and Disallowance of Claim. Prior to the filing of this adversary proceeding the debtor was the owner/operator of concrete mixing trucks. The debtor is a limited liability corporation, which is fifty percent owned by Robert Foran ("Foran"). Berleth and Associates has been dismissed from this proceeding.[1]

---

[1] ECF No. 22

Foran had financial difficulty, and after a Texas state court suit styled *Roesle v. Foran et al*, 19-DVC-267154, in Fort Bend County, 400th Judicial District Court, entered default judgment[2] against Foran and Nolan Star Trucking, LLC, Berleth was appointed as receiver. The order appointing receiver was first entered, as to Foran and Nolan Star Trucking on June 4, 2021,[3] and then on September 30, 2022, by an ex parte order supplement receivership[4] also against Preferred Ready-Mix, LLC.[5] Pursuant to the ex parte order, Berleth seized, in part, the assets of Ready-Mix on or about October 1, 2021.

On October 14, 2021, the debtor filed a Chapter 11 case.[6] By October 21, 2022, Berleth had actual notice of the bankruptcy filing.[7] At this juncture, given proper notice by the debtor of the filing and demand for possession of the seized assets by counsel, the Court would have expected an orderly progression in this case. That is seized assets would have been turned over to the debtor, and Berleth would have filed a claim for administrative expenses.[8] This did not occur.

Ready-Mix, unfortunately, had very serious issues with its choice of counsel. Counsel who filed the case for Ready-Mix was unresponsive, disappeared, and ordered to disgorge her retainer. Ultimately, the Court was forced to issue an arrest warrant as her unresponsiveness accrued. She was arrested and has filed personal bankruptcy to avoid the Court's disgorgement order entered in this case against her.

---

[2] ECF No. 53-1
[3] ECF No. 53-2
[4] ECF No. 53-4
[5] The Court issues no ruling as to the validity or appropriateness of this order. While raised at trial, it was not plead and not relevant to the causes of action raised by the debtor/plaintiff.
[6] Case No. 21-33369
[7] Berleth admitted having notice by October 21, 2022 but the Court finds that he had actual notice on October 14, 2021, the same day as the filing of the Chapter 11 petition.
[8] Pursuant to 11 USC § 542 and/or § 543.

This, unfortunately, led to a delay in turnover for which Berleth is not responsible.[9] However, the debtor did make demand on November 10, 2022[10] and Berleth should be held liable for any delay thereafter.

By two letters, one dated November 10, 2021, and one dated November 29, 2021, counsel for the debtor requested return of trucks, equipment, tools and various other items. Berleth did not comply with the November 10, 2021 demand. He thereafter caused further delay resulting in a partial turnover of trucks on November 20, 2022, which was followed up with an additional turnover on December 6, 2022. This adversary proceeding was thereafter filed on March 7, 2022.

**FACTUAL FINDINGS AND CONCLUSIONS OF LAW**

Berleth on October 1, 2021, seized six Peterbilt Mixer Trucks, a 2003 Ford Model F250, compressor and tools on the Ford Truck, office supplies and office records from the debtor. While demand for turnover was not made immediately after the filing of the Chapter 11 of the debtor due to issues of counsel, demand was properly made by the debtor's new counsel for return of these items on November 10, 2021. Thereafter, emails[11] indicate the response of Berleth[12] to the debtor and vindicate the debtor's complaints against him.[13] Most of these responses are serious

---

[9] The Court finds a ten-day delay for which Berleth is liable but only from November 10, 2021, to November 20, 2021. The remainder of the delay is directly attributable to the initial representation [and lack of action] of the debtor by its initial counsel as described herein. The mixing trucks and Ford Truck sat unused between seizure and turnover to the debtor, which was fifty days. Given their age and mileage (See pictures at ECF Nos. 53-5 – 53-11) it is not unexpected that they would have mechanical difficulties that the debtor would have to repair. The trucks had battery/tire issues [batteries discharged, and tires went flat] and in one instance due to nonuse the brakes pads fused to the brake discs.

[10] ECF No 54-3

[11] ECF No. 53-17

[12] "I really need my tow fee ($5,565), and I think I can get the tow guy to take his invoice as an administrative expense. Can your guy do that, and we'll get these tracks released this weekend." "Please see attached invoice which will need to be paid by certified funds prior to any release of the vehicles." "… there are several serious issues with this case that I would like to discuss with you, most importantly your authority to represent Preferred Ready-Mix, LLC." "I'll do $2,500 with the rest of my expenses accepted as administrative expenses **if he turns over the blue Mack daycab he has previously been ordered to surrender.**"

[13] Berleth also claimed his delay in turnover was due to his going on vacation. As stated on the record, the Court does not consider his vacation, apparently a cruise, in any way a viable excuse for any delay in turnover. As a claimed "expert" receiver, he cannot simply disappear for ten days on vacation and not have associate counsel to which to turn emergency matters, like the one in this case, to during his absence.

impediments to immediate turnover and are patently impermissible. Berleth had no authority to condition turnover. He intentionally and improperly used the leverage of his possession of the debtor's major assets and made demands for payment against the debtor in order to thwart immediate turnover. This is impermissible. Additionally, he [or his agents] collected estate assets from the debtor in the form of a $2,500.00 payment without Court authority. This type of behavior cannot be condoned and must be remedied by this Court.

Berleth's failure to act to turn over assets, together with his demands, effectively held the major assets of the debtor hostage. Berleth in his testimony indicated that he had followed the rules in this bankruptcy case. The Court strongly disagrees. The Court finds that Berleth attempted to use his position as a state court appointed receiver to thwart the provisions of 11 U.S.C. §§ 542 and 543.

Berleth provided an accounting to this Court in the underlying bankruptcy case on February 18, 2022.[14] The accounting is generous in Berleth's view of the facts but confirms the turnovers on November 20, 2021, and December 6, 2021.

The Court has applied the preponderance of the evidence standard to all claims of the plaintiff, except as noted and placed the burden of proof on the plaintiff.

## TURNOVER

Turnover is available to a trustee or debtor-in-possession. Section 542 of the Bankruptcy Code generally requires a noncustodial entity who has possession, custody, or control of property of the estate that the trustee may use, sell, or lease under Section 363 or may exempt under Section 522 to deliver to the trustee and account for the property or the value of such property. Section 543 generally requires a custodian with knowledge of the commencement of the case to deliver to the

---

[14] Case No. 21-33369, ECF No. 100

trustee and account for such property of the estate and the proceeds of such property. The provisions of Section 542(a) of the Bankruptcy Code, governing the turnover of tangible property, are intended to be self-executing.

The debtor/plaintiff has by clear and convincing evidence met its burden as to the six Peterbilt Mixer Trucks, the 2003 Ford Model F250 and the compressor. The Court can find that as to this property prior to turnover (1) the property was in the possession, custody or control of another entity; (2) the property could be used in accordance with the provisions of Section 363; and (3) the property had more than inconsequential value to the debtor's estate. However, as to the remainder of the property claimed by the debtor to be subject to turnover, the evidence is less substantial [as later described] and fails to meet a burden of clear and convincing evidence or even a lesser evidentiary standard of a preponderance of the evidence.

Turnover of the six Peterbilt Mixer Trucks, the 2003 Ford Model F250 and the compressor has already occurred. The debtor seeks damages as a result of Berleth's actions, including attorney fees and costs. The court finds it may sanction a party for violation of sections 542 or 543 of the Bankruptcy Code. The debtor did not call a witness for attorney's fees, so no attorney fees are awarded, but the Court grants damages of $500.00 per day, for each of the six Peterbilt Trucks and the Ford Truck, for each of the ten days the vehicles were not turned over. Therefore, there is a total damage award of $35,000.00 for the plaintiff and against Berleth.

## AUTOMATIC STAY

A debtor may recover damages for violation of the automatic stay in the context of a third party's exercising of control over property of the estate subject to a turnover proceeding or demand pursuant to Section 362(a)(3) of the bankruptcy code. The burden of proof on damages is on the

plaintiff, and damages must be proven with reasonable certainty.[15] Here, the plaintiff seeks remedies for violation of 11 U.S.C. § 362, including any remedies under 11 U.S.C. 362(k). Berleth argues that since the plaintiff is not an individual, it does not have standing to seek damages under 11 U.S.C. § 362(k).[16] The Court does not find that persuasive, as the Fifth Circuit has noted that a corporate debtor fell within the definition of an individual.[17] Berleth admits, however, that the Court does have the authority to find contempt for the failure to abide by a court order.

Here, the Court finds Berleth's actions were with actual knowledge of the bankruptcy filing and intentional, with the intent to deprive the debtor of his assets. Additionally, his actions were not in good faith and in contravention of the provisions of the automatic stay. Furthermore, the Court finds that Berleth did more than just passive retention of estate property, as demand was made.[18] Consequences for violations of the automatic stay can be severe. Parties that willfully violate the automatic stay may be liable to debtors for actual damages, including costs, attorneys' fees, and, in appropriate circumstances, punitive damages.[19] Here, actual damages would be duplicative of the damage award from violation of sections 543 and 542 of the Bankruptcy Code. However, to the extent the prior award of damages is inappropriate, it is awarded here as actual

---

[15] *In re Garza*, 605 B.R. 817(Bankr. S.D. Tex. 2019).
[16] Brief, ECF No. 49, page 4.
[17] *In re Community Home Financial Services, Inc.*, 583 B.R. 1, (Bankr. S.D. Miss. 2018), *citing St. Paul Fire & Marine Ins. Co. V. Labuzan*, 579 F.3d 533, 541 (5th Cir. 2009); *Matter of Community Home Financial Services Corporation*, 32 F.4th 472, 487 (5th Cir. 2022) ("we have previously held that both debtors and creditors have standing to sue under § 362(k)).
[18] *City of Chicago, Ill v. Fulton*, 141 S.Ct. 585, 590-92 (2021) (holding that the passive retention of estate property, absent a turnover order or demand, does not violate the automatic stay). Here, a demand for turnover was made by plaintiff on November 10, 2021, and the property was not returned until November 20, 2021, and December 6, 2021. The facts differ from the facts in *City of Chicago* as this adversary was filed, this Court held a trial, and procedural safeguards were followed.
[19] Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

damages on the same calculation noted above.[20] Additionally, given the finding of bad faith and intentional actions by Berleth, the Court awards punitive damages of $10,000.00. Accordingly, total damages for violation of the automatic stay are awarded in the amount of $45,000.00 for the plaintiff against Berleth.

## CONVERSION

The Court finds that the plaintiff has failed in its burden of proof of conversion. There are four elements to a conversion claim: (1) Plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) Defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) Plaintiff made a demand for the property; (4) Defendant refused to return the property.[21] The debtor's evidence of ownership, its legal title, and possession of the tools it claims were converted by Berleth is lacking. The debtor had no inventory of the tools it claims were converted. Moreover, there was no specific list of tools reflected in the asset schedules filed in the Chapter 11 case. The pleadings in the complaint as to the tools converted are without specificity. The list of tools introduced into evidence is not credible.[22] The list was prepared on the eve of trial from dubious memory, making the list suspect, and the values even more so. Prepared at least 396 days after the seizure [October 1, 2021 to November 1, 2022] it simply is not credible enough to meet the burden of proof required for a finding of ownership for conversion. Still further, the pictures presented by Berleth of the tools that were in the Truck after its seizure[23] placed more

---

[20] *In re Imperial Petroleum Recovery Corporation*, 2021 WL 933989, at *9 (Bankr. S.D. Tex. Mar. 11, 2021) (Generally damages for willful stay violations are limited to actual damages, and must be supported by sufficient factual findings).
[21] *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (1997).
[22] ECF No. 54-14
[23] ECF Nos. 53-5 – 53-11

doubt that these tools existed or that they were converted. Therefore, the plaintiff fails on this claim.

## DISALLOWANCE OF CLAIM

The administrative expense claim filed on February 18, 2022 by Berleth requesting $7,000.00 is disallowed.[24] Berleth's application for an administrative claim requests compensation under 11 U.S.C. § 503(b)(1)(A) as he claims that he incurred these expenses post-petition "in exchange for the assets being returned so that the Debtor could continue to conduct business." In assessing whether an administrative expense should be awarded, the Fifth Circuit has held that a § 503(b)(1)(A) expense "must have been of benefit to the estate and its creditors." First, and importantly Berleth is guilty of demanding and receiving estate property for turnover without court authority.[25] This is sufficient cause to disallow his claim. However, his delay in turnover, including the leverage of asset possession, and his improper demand for payment greatly inflated any claims he may have held.

Therefore, Berleth's claimed administrative expense was of no benefit to the estate and its creditors. The claim is either wholly or mostly self-serving and inflated due to his improper actions detailed in this order.

## CONCLUSION

The Court grants judgment to the Plaintiff under three counts, Turnover, Stay Violation, and Disallowance of Claim. The Court denies relief on the count of conversion.

**THEREFORE, IT IS ORDERED** that judgment is granted in favor of the plaintiff, Preferred Ready-Mix LLC, in the amount of $45,000.00, comprised of actual damages in the amount of $35,000.00, and punitive damages in the amount of $10,000.00.

---

[24] Bankruptcy Case No. 21-33369, ECF No. 98
[25] Emails indicate Berleth or his agents demanded greater sums but received $2500.

**IT IS FURTHER ORDERED** that Robert Berleth's administrative claim in the amount of $7,000.00 is disallowed.

All other relief is denied. This is a final order disposing of all other claims.

SIGNED 11/09/2022

_____
Jeffrey Norman
United States Bankruptcy Judge